# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed November 12, 1920.

LELIA V. HOLLAND
VS.
WILLIAM TEGELER.

*John S. J. Healy* and *Daniel B. Chambers* for plaintiff.

*Horace T. Smith* for defendant.

DAWKINS, J.—

Gentlemen, I think that this is a matter that ought to be decided promptly; it has been going along now for nearly a week. I think the jury has agreed, as well as it can agree. I do not think the law submitted presents any different aspects from the impression already formed, because the legal propositions involved seem to me to be perfectly clear. Whatever conclusion may be reached in regard to the contract, there is one main question, and that is about the only question, it seems to me, to which we should give any serious consideration, and that is, what took place at the last of July or the first of August. If we attempt to enforce the old contract, of course, we have nothing particularly to do with what took place before or after it was executed except that the circumstances show how the parties thought about the matter. If, on the other hand, we consider the subsequent acts as modifying the contract, or extending it, then it might be a matter of more serious consideration. I think there is something in the suggestion of a part performance, because it is stated in the contract that the purchaser was to take possession on or before the first day of July.

Now, she did take possession; she entered into possession; and, while it was done, perhaps, without the actual, personal knowledge of the seller, yet she did go in, and he did not do anything to attempt to get rid of her, either by notice to move or by objecting to the occupancy in any way; so, on the face of the other testimony taken in consideration with the contract, I think there ought to be some consideration given to an apparent or part performance of the contract, apart from the fact that there were expense bills on the property paid by the plaintiff. These bills were apparently paid by the complainant before the first of August. Whether she had to pay them at that time or not is a question we need not determine now, but it does seem to me to remove some of the difficulties in trying to arrive at a conclusion—the fact that she was in the house, and was there under color of right under the contract. And then we have this in the case: Nobody is apparently hurt, except that the defendant's agent, to make the sale, has seen fit to deduct his commission of $150. Whether the defendant was going to return it or not or whether or not the offer was made to return it, his having gotten the money, the deposit of $200, it seems to me—if that had any place in the case at all, the obligation would necessarily be upon the principal of that contract to offer to return the whole sum of money received. That need not concern us at the present time.

If there ever was a case that appealed to the conscience of the court, it seems to me it is this one. Both sides have seen fit to use the words "conscience" and "fairness." Here we have a lady, inexperienced in business, inexperienced in buying property or doing anything in connection with property, depending upon somebody—whether Crowson was her agent or not, she was depending upon the agent or the defendant, one or the other or both of these gentlemen, to arrange a building association mortgage for her. Mr. Tegeler was tired of the delay and Miss Holland wanted to buy a home. Mr. Tegeler knew he had a certain customer in Mr. Donohue, and he naturally wanted to be secured in making a sale and in getting his money. I believe both parties were acting in good faith. I do not see anything in the conduct of either of the parties to

cause any suggestion of improper conduct. I feel it proper to say that it is a very natural thing for Mr. Tegeler not to let any grass grow under his feet. He didn't do it, nor did the plaintiff, by any act of hers, let any grass grow under her feet. It is true there was a long delay from the date of the contract to the time when the property was sold to Mr. Donohue, but I do not think we can shut our eyes to the fact that both the plaintiff and defendant have testified that at that season of the year the building associations, upon whom they were depending to raise the money, were not making loans. The plaintiff made every effort to raise the money; it was known from the beginning that she was depending upon getting a building association loan. Mr. Tegeler did not, with all his efforts, succeed in getting this loan; Miss Holland, through Crowson or her independent efforts, did not succeed in getting the loan, until necessity was upon her at the last minute. She found that nobody else would get her the money, so she made what seems to me a most energetic effort and secured it. The testimony shows that she must have had that money promised or the loan, at any rate, approved, on the 2nd of August—certainly on the 5th or 6th of August.

If we rely upon the old contract, I should not say, under the conditions I have just mentioned, that it would have been unreasonable for Mr. Tegeler to have waited even for a month, because everybody knows who had dealings with property at that time— and it has been testified here day after day in these specific performance cases, until I think the court is entitled and probably bound to take judicial notice of the fact, that money was tight and building associations were making no investments. So, in the absence of any suggestion that there was any intentional delay, with the party in possession, even under the old contract, there was not such an unreasonable lapse of time as would justify the court in refusing to enforce it. I have in mind, in making that suggestion, especially the case of Shea, in 130th Maryland, which was referred to in the argument, in which that question has been discussed in connection with reasonableness of enforcing a contract.

This was a small proposition in a way; yet I can realize it is a mighty big proposition to this plaintiff, probably of more moment than it was to the defendant.

In the case of Barney Abrams vs. Eckenrode, lately decided, both parties defendant said they did not mean to sell, didn't want to do it, and did not intend to do what the agent decided to do. There can be no doubt about the ratification in this case, for certainly the frank, honest and unqualified ratification given by Mrs. Tegeler removes any question on that score. I feel that the law certainly ought to say, even if Mr. Tegeler wanted to settle as soon as he could, that he ought to have been sufficiently reasonable to have accepted the statement of plaintiff on the evening of August 2nd, in the telephone message, when she reported that the association had looked at the house that day and would probably favorably report the loan. It would not seem reasonable under all the circumstances to require plaintiff to go out that evening and get a letter saying that somebody had promised to make the loan. It would have seemed entirely reasonable to have waited a few days after the 2nd of August. In fact, Mr. Tegeler said himself that he expected to grant two weeks for examination of title, but he only wanted to be sure that he would not have to wait any longer to know that the loan had been secured.

Under those circumstances, I do not think we can reasonably say, under either the old contract or the extension, that time was of the essence of the contract. The question of agency being removed, it does seem to me that the real difficulties that I have been considering, prior to hearing the discussion—and I have been very much illumined by the discussion—have been removed. Mr. Tegeler made the extension himself, for himself, and for Mrs. Tegeler, his wife ratified everything that he did. Up to this minute, she says, she ratified all that he did, expected him to do everything to close the matter. Under all circumstances, therefore, I do not feel it would be just, or equitable, to deprive this lady of an opportunity, she being in a position to do it, to complete her contract. Specific performance is not necessarily a matter of right. We must consider all the circumstances; if we do, the contract should be enforced.

I think, however, that settlement should be made within some definite

time. I suggest that the settlement be made in two weeks; I think the adjustment should be made as of July 1st. I think the purchaser should pay the interest on the money from July 1st, 1920. She should also pay her part of the expenses since July 1st. I do not know anything else I should suggest regarding the settlement, except in regard to the question of rent. Since the plaintiff was in this house on the first of July under the contract, she necessarily would not have to pay any rent. I do not think she has anything to do with the question of $150 deposit. Mr. Tegeler put it in the hands of his agent and his agent saw fit to pay himself his commission. That may be the proper thing to do now, since times have changed. In any event, plaintiff in this case will have nothing to do with that, except to get the benefit of the $200 deposit, on making settlement.

Now, gentlemen, I have given you my views so as not to delay but bring the matter to a conclusion. I should say if the settlement is not made in two weeks—unless there is some good reason for it shown—that the plaintiff ought to vacate the house and make her settlement as of the time she vacates. It does seem to me that that will obviate the necessity for doing anything more with the rent petition except to dismiss it. If the party is entitled to possession and she has had possession since the 1st of July, of course, she is not compelled to pay rent. You can put that in the form of an order, but it seems to me that the action I am taking on the bill would dispose of the question of rent. In order to help you to a settlement without any unnecessary delay, I am prepared to fix the rent in case of a default. By the testimony this plaintiff was directed to pay at least $35; that was Mr. Tegeler's suggestion. She, of course, denies any figure was named. It seems to me that was a fair rent up to that time. Now, the testimony is that the property ought to rent for $40 per month. So it would be proper to require plaintiff to pay $35 up to September 1st, that is, for the months of July and August, and from that time $40 per month.